# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

KELLY LEON WAYMIRE,                )
                                   )
           Petitioner,             )
                                   )
v.                                 )         Case No. 11-CV-0205-CVE-TLW
                                   )
TRACY McCOLLUM, Warden,[1]         )
                                   )
           Respondent.             )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Kelly

Leon Waymire, a state inmate appearing pro se. Respondent filed a response (Dkt. # 8) and

provided the state court records (Dkt. ## 8, 9, 10) necessary for adjudication of Petitioner's claims.

Petitioner filed a reply to Respondent's response (Dkt. # 15). For the reasons discussed below, the

Court finds the petition for writ of habeas corpus shall be denied.

### BACKGROUND

On October 1, 2007, at approximately 7:00 a.m., Petitioner arrived at the home of his former

girlfriend, Teresa Thompson (Thompson), to exact revenge for her termination of their relationship.

The home was located in Broken Arrow, Oklahoma, a suburb of Tulsa. Also present in the home

were George Edwards (Edwards), Thompson's then-current boyfriend, and Thompson's fifteen (15)

year old daughter, L.T. After awakening that morning, Edwards had gone to the garage to smoke

a cigarette when he heard scratching at the side garage door. When he opened the door, he saw

---

[1]Petitioner is in custody at the Oklahoma State Reformatory where Tracy McCollum is the warden. Under Rule 2(a), Rules Governing Section 2254 Cases, Tracy McCollum is the proper party respondent. Therefore, Tracy McCollum, Warden, is hereby substituted in place of James Rudek, Warden. The Clerk of Court shall be directed to note the substitution on the record.

Petitioner, dressed in black, and holding two loaded handguns, a .22 caliber and a .38 caliber revolver. Petitioner raised a gun up to Edwards' head, but Edwards pushed the door closed as Petitioner fired a shot. Edwards then ran back to the master bedroom to get a .38 caliber handgun he and Thompson had acquired for protection from Petitioner. He warned Thompson that "he's here and he's shooting at me." Edwards also told L.T. to hide in the closet in her upstairs bedroom and to call 911. Meanwhile, Petitioner ran into the backyard and kicked in the kitchen door to gain access to the house.

Petitioner and Edwards exchanged gunfire inside the house. Edwards told Thompson it was "time to get out." Although Edwards escaped through the window of the bathroom located in the master bedroom, Thompson, concerned for L.T.'s safety, "froze" beside her bed and was unable to escape. She crouched down and waited. Petitioner entered the bedroom yelling, "[g]et over here. Teresa, this is your last chance. I'll kill everybody in this house if you don't come over here right now. It's your last chance." Petitioner then grabbed Thompson, placed the .22 caliber handgun against her arm and shot her. The bullet went through her arm and into her back where it severed her spinal cord resulting in instantaneous paralysis. She was unable to move or feel her legs.

Both Thompson and L.T. called 911. Within minutes, Officers Zachary Schatz, Chad Burden, and Greg Fell, all members of the Broken Arrow Police Department (BAPD) arrived at the home. As they walked up to the house armed with their long guns, they heard gunfire and a woman screaming. Faced with an active shooter, they decided to make entrance to the house through the front door. When they were within a few feet of the front door, they heard gunfire and saw glass flying. They returned fire. Officer Schatz fell backwards because he was struck in the chest. However, because he was wearing a trauma plate, he suffered only deep bruising. Officers Burden

and Fell sought cover to avoid being shot. They reported that more than three shots were fired by the gunman.

Additional BAPD officers, including members of the Special Operations Team (SOT), arrived on the scene. Using a ladder, they were able to rescue L.T. from her upstairs bedroom. In addition, a crisis negotiator spoke on the phone with Petitioner multiple times, attempting to convince him to release Thompson who needed medical care for her serious injuries. Petitioner refused to release Thompson. The crisis negotiator also spoke to Thompson in an effort to assess her condition. After four (4) hours, the members of SOT implemented their hostage rescue plan. First, they threw a "flash-bang" device into the bathroom to create a diversion. Then, the team members entered the house. Officer Michael Shaw led entry into the master bedroom. As he entered, he saw two muzzle flashes and heard gunfire. Then, Petitioner yelled "[s]top, stop, I've had enough," and dropped a handgun on the bed. He was taken into custody. In the bedroom, police officers found Thompson and the body of Roxie, one of the family's dogs, who had been shot and killed by Petitioner. Thompson was taken by life flight to St. Francis hospital where she received treatment for a collapsed lung and her gunshot wounds. The physician providing treatment at the hospital testified at trial that her paralysis is permanent and that she would be unable to walk again.

Based on those events, Petitioner was charged by Information filed in Tulsa County District Court, Case No. CF-2007-5255, with First Degree Burglary (Count 1), Shooting With Intent to Kill – George Edwards (Count 2), Shooting With Intent to Kill – Officer Zachary Schatz (Count 3), Shooting With Intent to Kill – Teresa Thompson (Count 4), Possession of a Firearm While Under Supervision of DOC (Count 5), Shooting With Intent to Kill – Officers Chad Burden and Greg Fell (Count 6), Kidnaping (Count 7), Violation of a Protective Order (Count 8), Cruelty to Animals

(Count 9), and Shooting With Intent to Kill – Officer Michael Shaw (Count 10).  Except for Counts 5 and 8, the charges were filed After Former Conviction of a Felony.  At the conclusion of a two stage trial, held September 22-26, 2008, a jury found Petitioner guilty as charged.  On November 3, 2008, the trial judge dismissed Count 6 on double-punishment grounds, and sentenced Petitioner in accordance with the jury's recommendations on the remaining counts, as follows: Count 1, 35 years imprisonment; Counts 2, 3, 4, 7, and 10, life imprisonment on each count; Count 5, 10 years imprisonment; Count 8, one year in the county jail; and Count 9, 10 years imprisonment.  The trial judge ordered all of the life sentences to run consecutively, and the remaining sentences to be served concurrently with the life sentences.  At trial, Petitioner was represented by attorney Rick Couch.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Stuart W. Southerland, Petitioner raised the following propositions of error:

Proposition 1: The evidence was insufficient to support the intent to kill in Count IV. Under the facts of this case, Appellant's refusal to kill Teresa Thompson requires the reversal of his conviction for shooting with intent to kill.

Proposition 2: Appellant's convictions for shooting Teresa Thompson with intent to kill in Count IV and kidnaping Teresa Thompson in Count VII are based upon the same act and violate statutory and Constitutional prohibitions against double punishment.

Proposition 3: Appellant's convictions for first degree burglary in Count I and shooting with intent to kill in Count II violate statutory and Constitutional prohibitions against double punishment.

Proposition 4: The State presented irrelevant and prejudicial evidence which requires the reversal of Appellant's convictions for a new trial or, in the alternative, resentencing before a new jury without the complained-of evidence.

    1.    The facts in support of and surrounding the protective order.

    2.    The jury heard irrelevant and prejudicial evidence regarding the extent of Teresa Thompson's injuries.

4

Proposition 5: It was reversible error to refuse Appellant's request to present mitigating evidence in the second stage. Appellant was denied the right to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution.

Proposition 6: Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Proposition 7: Appellant should not have been convicted of possession of a firearm while under DOC supervision after former conviction of a felony. Appellant only had a single prior; the one for which he was on probation. This Court should enter an order *nunc pro tunc* in Count V removing the "after former conviction of a felony" designation.

Proposition 8: Appellant's sentence was excessive and should be modified.

See Dkt. # 8-1. Petitioner also filed a motion to supplement the record and requested an evidentiary hearing on his claim of ineffective assistance of trial counsel. See Dkt. # 8-4. On December 11, 2009, in Case No. F-2008-1088, the OCCA entered its unpublished summary opinion denying Petitioner's motion to supplement the record and request for an evidentiary hearing, affirming the Judgment and Sentence of the district court, and remanding to the district court for correction of the Judgment and Sentence (Count 5) nunc pro tunc, to delete the reference to a prior felony conviction. See Dkt. # 8-3.

On August 11, 2010, Petitioner filed an application for post-conviction relief in the state district court. See Dkt. ## 8-5 and 8-6. By order filed September 16, 2010, the state district judge denied the request for post-conviction relief. See Dkt. # 8-6. Petitioner appealed. He raised two (2) propositions of error, as follows:

(1)    Appellant was deprived of effective assistance of trial counsel because trial counsel refused to request for psychiatrist expert assistance for the presentation of Appellant's defense of involuntary intoxication because trial counsel's office [of] the Tulsa County Public Defender's Office advised trial counsel it would be too costly in violation of Petitioner's rights guaranteed by the 6th Amendment of the U.S. Constitution.

(2)     Trial counsel knowingly deprived petitioner of his defense of involuntary intoxication because of the conflict of interest created by his office in refusing to pay for the assistance of a psychiatrist in violation of the 6th amendment of the United States Constitution.

See Dkt. # 8-5, attached post-conviction appeal brief. On January 19, 2011, in Case No. PC-2010-962, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 8-6.

Petitioner commenced the instant habeas corpus action by filing his petition on April 6, 2011. See Dkt. # 1. He identifies the following grounds of error:

Ground 1:     The evidence was insufficient to support the intent to kill in Count IV.

Ground 2:     Petitioner's convictions for shooting Teresa Thompson with intent to kill in Count IV and kidnaping her in Count VII are based on the same acts and violate constitutional prohibitions against Double Jeopardy.

Ground 3:     Petitioner's convictions for first degree burglary in Count I and shooting with intent to kill in Count II violate constitutional prohibitions against Double Jeopardy – Punishments.

Ground 4:     The state presented irrelevant and prejudicial evidence which deprived Petitioner of a fair trial.

Ground 5:     Petitioner received ineffective assistance of counsel.

Ground 6:     Trial court's refusal to allow mitigating evidence in second stage of trial denied Petitioner a fair trial.

Ground 7:     The Oklahoma Court of Criminal Appeals decided Petitioner's Eighth Amendment claim in a manner contrary to the U.S. Supreme Court.

Ground 8:     Petitioner was denied his due process and Sixth Amendment right to present a defense solely because he invoked his Fifth Amendment right to remain silent.

(Dkt. # 1). In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief on grounds 1, 2, 3, and 5 under 28 U.S.C. § 2254(d); grounds 4, 6, and 7 are matters

of state law and are not cognizable on habeas corpus review; and ground 8 is procedurally barred. See Dkt. # 8.

## *ANALYSIS*

### A.  Exhaustion

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner fairly presented grounds 1-7 to the OCCA on direct or post-conviction appeal.  Therefore, the Court finds Petitioner satisfied the exhaustion requirement for grounds 1-7 before filing his habeas petition. Ground 8, linking his failure to testify to the invocation of his Fifth Amendment right to remain silent, has not been presented to the state courts.  However, in light of the procedural posture of this case, the Court finds an absence of available State corrective process for ground 8, see 28 U.S.C. § 2254(b)(1)(B), and that claim is not barred by the exhaustion requirement.  Nonetheless, as discussed in Part D, below, habeas corpus relief on ground 8 is denied as procedurally barred.

### B.  Evidentiary hearing

The Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

### C.  Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Here, Petitioner presented grounds 1-7 to the OCCA on direct

appeal. Because the OCCA addressed Petitioner's claims on the merits, the Court will review these claims under the standards of § 2254(d).

To the extent Petitioner also claims violations of the Oklahoma Constitution or other Oklahoma law, those claims are denied because they are not cognizable on federal habeas corpus review. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

### 1. Sufficiency of the evidence supporting Count 4 (ground 1)

As his first ground of error, Petitioner claims that the State presented insufficient evidence to support his conviction for Shooting With Intent to Kill, as charged in Count 4. In his petition, Petitioner cites to his attached direct appeal brief where he argued that "there was nothing to indicate that Appellant wanted to shoot Teresa Thompson." See Dkt. # 1 at 41. He further argued that:

> Even if the discharge of the weapon was intentional, there was nothing about the incident which suggests the intent to *kill*. At point blank range, Appellant did not aim the gun at Teresa's head, heart, or any other vital organ. He only fired once, and the bullet struck her in the right bicep. And perhaps most importantly, during the approximately three hours that he spent alone with her in the bedroom, Kelly Waymire never did anything to suggest that he wanted to kill her. Simply put, if he wanted his ex-girlfriend dead, why didn't he at least try a second time? He certainly had the ammunition. There is only one logical explanation: *he did not want to kill Teresa*. He wanted her as his girlfriend.

Id. at 42. The OCCA rejected this claim, citing Coddington v. State, 142 P.3d 437, 456 (Okla. Crim. App. 2006), and finding as follows:

> Appellant, armed with two pistols and ammunition, forcibly entered the home of his ex-girlfriend, Teresa Thompson, firing his weapons and threatening to kill everyone inside the home. He then tracked down Thompson, who was hiding behind a bed; he grabbed her and shot her in the torso at very close range. From the evidence presented, a rational trier of fact could conclude that Appellant intended to kill Thompson when he shot her.

(Dkt. # 8-3 at 2-3).

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

The Court finds that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational fact-finder to have found beyond a reasonable doubt that Petitioner was guilty of Shooting With Intent to Kill, as charged in Count 4. In applying the Jackson standard, the Court looks to Oklahoma law to determine the substantive elements of the relevant criminal offense. Jackson, 443 U.S. at 324 n.16. Under Oklahoma law, "[e]very person who intentionally and wrongfully shoots another with or discharges any kind of firearm, with intent to kill any person . . . . shall upon conviction be guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding life." OKLA. STAT. tit. 21, § 652(A).

The intent required for an offense under OKLA. STAT. tit. § 652(A) can be shown by circumstantial evidence. See Carpitcher v. State, 586 P.2d 75, 77 (Okla. Crim. App. 1978). Here, there was sufficient circumstantial and direct evidence from which a reasonable juror could find that Petitioner possessed the requisite intent. The evidence demonstrated that Petitioner arrived at the Thompson home on the morning of October 1, 2007, armed with two handguns and extra ammunition. See Dkt. # 10-7, Tr. Vol. II at 261; Dkt. # 10-8, Tr. Vol. III at 332, 336. As Petitioner entered the master bedroom, he told Thompson he would kill her and everyone else in the house if she did not come to him. See Dkt. # 10-8, Tr. Vol. III at 333. Thompson testified that Petitioner then grabbed her, placed the gun against her arm and shot her. Id. at 334. The bullet entered her torso, severed her spinal cord, and passed within one (1) inch of her heart and esophagus. Id. at 484, 488, 491, 494. After Petitioner shot Thompson resulting in her immediate paralysis, he failed to seek medical care for her, instead choosing to hold her hostage for approximately four (4) hours. Id. at 346, 471. Based on those facts, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence supporting his conviction for Shooting With Intent to Kill – Teresa Thompson (Count 4) was not contrary to, or an unreasonable application of, of federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the evidence presented at trial. See 28 U.S.C. § 2254(d)(1), (2); Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact). Habeas corpus relief is denied on ground 1.

**2. Double jeopardy (grounds 2 and 3)**

In ground 2 of his petition, Petitioner alleges that his convictions of Count 4, Shooting With Intent to Kill as to Thompson, and of Count 7, Kidnaping of Thompson, violate constitutional prohibitions against double jeopardy. In ground 3, Petitioner argues that his convictions of First Degree Burglary (Count 1) and of Shooting With Intent to Kill – Edwards (Count 2) violate constitutional prohibitions against double jeopardy and double punishment. Petitioner raised these claims on direct appeal as Propositions 2 and 3. The OCCA denied relief, finding as follows:

> As to Proposition 2, Appellant's conduct of shooting Thompson, and then continuing to hold her hostage – and without medical attention – for several hours, were not the "same act," and separate convictions for Shooting with Intent to Kill (Count 4) and Kidnapping (Count 7) do not amount to double punishment. 21 O.S.2001, § 11; *Nowlin v. State*, 2001 OK CR 32, ¶ 6. 34 P.3d 654, 655; *Kupiec v. State*, 1972 OK CR 214, ¶ 5, 93 P.2d 555, 446. Proposition 2 is denied. As to Proposition 3, Appellant's forcible entry of Thompson's home by breaking through an outside door, and his shooting at Thompson's boyfriend, were also distinct acts, and separate convictions for First Degree Burglary (count 1) and Shooting with Intent to Kill Count 2) do not constitute double punishment. *Williams v. State*, 1991 OK CR 28, ¶ 6, 807 P.2d 271, 283. Proposition 3 is denied.

(Dkt. # 8-3 at 3).

To the extent Petitioner challenges his convictions under Oklahoma's double punishment statute, OKLA. STAT. tit. 21, § 11 (2001), the Court finds that his claims are purely matters of state law and cannot serve as a ground for federal habeas relief. Estelle, 502 U.S. at 67-68; El Mansouri v. Jones, 235 F. App'x 713, 717 (10th Cir. 2007) (unpublished)[2] (habeas petitioner's claim that convictions violated Oklahoma's statutory prohibition against double punishment involved purely

---

[2]This and other unpublished opinions herein are not precedential but are cited for persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

matters of state law and could not serve as grounds for federal habeas corpus relief). Habeas relief based on alleged violations of OKLA. STAT. tit. 21, § 11, is denied for that reason.

On direct appeal, Petitioner also argued that his convictions violated federal double jeopardy principles. See Dk. # 8-1 at 17, 18. Although the OCCA did not specifically address Petitioner's federal double jeopardy claims, the OCCA's decision to deny relief is nonetheless entitled to deference under § 2254(d). See Richter, 131 S. Ct. at 784-85 (citing cases from Courts of Appeals, including Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999), and stating that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary").

The Double Jeopardy Clause of the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This amendment is intended to prevent a defendant from receiving successive punishments or being subjected to successive prosecutions for the same offense. United States v. Dixon, 509 U.S. 688, 704 (1993). The Supreme Court has explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932) (citing Gavieres v. United States, 220 U.S. 338, 342 (1911)). "The Court has recognized that 'the Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial.'" United States v. Benoit, 713 F.3d 1, 12-13 (10th Cir. 2013) (quoting Illinois v. Vitale, 447 U.S. 410, 416 (1980)).

As to Petitioner's claim raised in ground 2, the relevant Oklahoma statutes are OKLA. STAT. tit. 21, § 652(A) (providing elements of shooting with intent to kill) and OKLA. STAT. tit. 21, § 741 (providing elements of kidnaping). Under OKLA. STAT. tit. 21, § 652(A), "[e]very person who intentionally and wrongfully shoots another with or discharges any kind of firearm, with intent to kill any person . . . shall upon conviction be guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding life." Under OKLA. STAT. tit. 21, § 741, "[a]ny person who, without lawful authority, seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away another, with intent . . . to cause such other person to be confined or imprisoned in this state against the will of the other person . . . shall be guilty of a felony punishable by imprisonment in the custody of the Department of Corrections for a term not exceeding twenty (20) years." The jury was instructed in accordance with these statutes as to the elements of the crimes. See Dkt. # 10-13, O.R. at 258, 259.

Under the Blockburger test, the State was required to prove that Petitioner shot Thompson with the intent to kill her in order to establish that Petitioner was guilty of Shooting With Intent to Kill. In contrast, the State was required to prove that Petitioner forcibly confined Thompson against her will in order to establish that Petitioner was guilty of Kidnaping. Clearly each statute requires proof of a fact which the other does not. Blockburger, 284 U.S. at 304. Therefore, after a review of the record, the Court concludes that Petitioner's convictions of both Shooting With Intent to Kill (Count 4) and Kidnaping (Count 7) did not violate the Double Jeopardy Clause of the United States Constitution. The OCCA's decision was not contrary to, nor an unreasonable application of, federal law as interpreted by the Supreme Court. Therefore, Petitioner is denied habeas relief on Ground 2.

As to Petitioner's claim raised in ground 3, the relevant Oklahoma statutes are OKLA. STAT. tit. 21, § 652(A) (providing elements of shooting with intent to kill) and OKLA. STAT. tit. 21, § 1431 (providing elements of first degree burglary). The elements provided under OKLA. STAT. tit. 21, § 652(A) are cited above. Under OKLA. STAT. tit. 21, § 1431, "[e]very person who breaks into and enters the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein . . . is guilty of burglary in the first degree." The jury was instructed in accordance with these statutes as to the elements of the crimes. See Dkt. # 10-13, O.R. at 256-58.

Under the Blockburger test, the State was required to prove that Petitioner shot at Edwards with the intent to kill him in order to establish that Petitioner was guilty of Shooting With Intent to Kill, as charged in Count 2. In contrast, the State was required to prove that Petitioner broke into and entered Thompson's home while another person was present with the intent to commit a crime therein to establish that Petitioner was guilty of First Degree Burglary, as charged in Count 1. Clearly, each statute requires proof of a fact which the other does not. Blockburger, 284 U.S. at 304. Therefore, after a review of the record, the Court concludes that Petitioner's convictions of both Shooting With Intent to Kill (Count 2) and First Degree Burglary (Count 1) did not violate the Double Jeopardy Clause of the United States Constitution. The OCCA's decision was not contrary to, nor an unreasonable application of, federal law as interpreted by the Supreme Court. Therefore, Petitioner is denied habeas relief on Ground 3.

### 3. Admission of irrelevant and prejudicial evidence (ground 4)

In ground 4, Petitioner claims that irrelevant and prejudicial evidence of prior bad acts was improperly admitted thereby depriving him of a fair trial. On direct appeal, Petitioner complained that testimony describing incidents preceding the events of October 1, 2007, was improperly

admitted.  See Dkt. # 8-1 at 20-28.  Petitioner also complained that the jury heard irrelevant and prejudicial evidence regarding the extent of Teresa Thompson's injuries.  Id. at 28-30.  The OCCA denied relief, finding as follows:

> [T]he State presented evidence in the guilt stage of trial that, in the weeks preceding the shooting, Appellant had continually harassed Thompson and her household, and had committed numerous acts of vandalism there – including setting fire to several vehicles.  Most of the other-crimes evidence involved acts committed after Thompson obtained a protective order against Appellant, and was directly relevant to Count 8 (Violating a Protective Order).  Beyond that, the other-crimes evidence was [sic] shed light on Appellant's intent on the day in question.  Appellant was willing to defy a court order and continue to commit violent acts with no other purpose than to terrorize Thompson. This evidence was relevant to Appellant's intent when he broke into Thompson's home and began shooting.  The State also presented a modest amount of testimony about the nature and effect of Thompson's injuries.  Appellant made no contemporaneous objection to this evidence, so we review for plain error.  This evidence gave the jury a better understanding of the effects of Appellant's violence, and again, bore on Appellant's intent.  For example the medical testimony showed that the bullet came very close to Thompson's aorta.  Furthermore, Thompson testified that her permanent paralysis resulting from Appellant's violence is accompanied by muscle spasms and constant pain.  We find no plain error in this brief testimony about the direct results of Appellant's choices.  Proposition 4 is denied.

(Dkt. # 8-3 at 3-4 (citations omitted)).

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67; see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010).  In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)).  "[B]ecause a fundamental-fairness analysis is not subject to clearly definable

legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)).

After reviewing the record in this case, the Court finds Petitioner has not made the necessary showing. The record reflects that, on September 11, 2008, prior to commencement of trial, the trial judge heard argument on Petitioner's objections to the State's notice of intent to admit evidence of prior bad acts. See Dkt. # 10-5, Tr. Mot. Hr'g at 20. The State argued that testimony regarding Petitioner's harassment of Thompson in the months preceding October 1, 2007, was "extremely probative." Id. at 26. This Court has reviewed the challenged testimony regarding prior bad acts and finds that, in light of all the evidence presented at trial, the complained of testimony was relevant and neither repetitive nor unduly prejudicial. In addition, the testimony describing the extent and effect of Thompson's injuries was not unduly prejudicial and supported the elements of Shooting With Intent to Kill. In summary, Petitioner has failed to demonstrate that admission of the prior bad acts evidence and testimony regarding the extent and effects of Thompson's injuries rendered his trial fundamentally unfair. Petitioner's request for habeas corpus relief on ground 4 shall be denied.

### 4. Ineffective assistance of trial counsel (ground 5)

In his fifth proposition of error, Petitioner alleges that trial counsel provided ineffective assistance. See Dkt. # 1 at 16. In support of this claim, Petitioner directs the Court to his direct appeal brief, pages 1-9 and 39-44, and to his petition in error filed on post-conviction appeal. Id. On direct appeal, Petitioner argued that trial counsel provided ineffective assistance when he failed to present, in the first stage of trial, medical or pharmacological evidence of the combined effect of

the drugs Petitioner was taking at the time of the offenses.  See Dkt. # 8-1 at 40.  Although trial

counsel requested an instruction on voluntary intoxication, he failed to present any evidence to

support the instruction.  Id.  Also, Petitioner claimed that had the medical or pharmacological

evidence been presented in the first stage, counsel could have argued for a shorter sentence in the

second stage.  Id.  The OCCA rejected these claims, citing Strickland v. Washington, 466 U.S. 668,

690-91 (1984), and Jones v. State, 128 P.3d 521, 545 (Okla. Crim. App. 2006), and found that:

> Appellant claims his trial counsel was deficient for not presenting evidence to
> support a defense of voluntary intoxication, which might have mitigated some counts
> to lesser-included offenses, and might have favorably affected the sentences
> imposed. But the record shows that trial counsel did, in fact, investigate this defense
> theory and was prepared to present testimony on the matter.  However, the record
> also shows that Appellant refused to testify on his own behalf, specifically claiming
> that his testimony was not necessary for such a defense.  Under these facts, it was.
> There was no other way for trial counsel to establish whether Appellant had ingested
> any controlled, prescribed, or otherwise intoxicating combination of substances at
> such time as could have affected his mental faculties.  Appellant has filed a motion
> to supplement the record on this issue, and requested an evidentiary hearing,
> pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, 22 O.S.,
> Ch. 18, App. (2009).  The information appended to that motion does not counter
> evidence in the record that trial counsel investigated the defense, that he had
> witnesses prepared to testify about it, and that Appellant knowingly refused to
> provide an essential evidentiary link to support it.  Any failure to substantiate an
> intoxication defense lies with Appellant, not his trial counsel.

(Dkt. # 8-3 at 5-6 (footnotes omitted)).

On post-conviction appeal, Petitioner argued that trial counsel provided ineffective assistance

when he refused to request a psychiatrist to aid in the presentation of his defense of involuntary

intoxication.  See Dkt. # 8-5 at 17.  In addition, Petitioner claimed that trial counsel "knowingly

deprived Petitioner of his defense of involuntary intoxication because of the conflict of interest

created by his Office in refusing to pay for the assistance of a psychiatrist in violation of the 6th

Amendment of the United States Constitution." Id. at 30.  The OCCA refused to consider the merits

of these claims on post-conviction appeal, finding that because Petitioner raised ineffective assistance of trial counsel claims on direct appeal, the claims raised on post-conviction appeal were barred based on res judicata. See Dkt. # 8-6 at 2. Furthermore, the OCCA found that any additional allegations of ineffective assistance of trial counsel had been waived. Id. Significantly, however, in its direct appeal summary opinion, see Dkt. # 8-3, the OCCA wrote as follows:

> The record shows that Appellant desired a defense on *involuntary* intoxication, an exculpatory defense, as opposed to the merely mitigating defense of voluntary intoxication, see Wool[d]ridge v. State, 1990 OK CR 77, ¶ 20, 801 P.2d 729, 734, and that he complained that his counsel would not advance that defense. Our analysis applies equally to either defense.

See Dkt. # 8-3 at 5 n.1. Thus, the OCCA considered and rejected on direct appeal Petitioner's ineffective assistance of counsel claims based on failure to raise the defense of involuntary intoxication. Thus, the Court shall review all of Petitioner's ground 5 claims of ineffective assistance of counsel under 28 U.S.C. § 2254(d).

To be entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication was an unreasonable application of Strickland. 28 U.S.C. § 2254(d). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover,

review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

For the reasons discussed below, Petitioner's claims of ineffective assistance of trial counsel fail under the doubly differential standards of 28 U.S.C. § 2254(d) and Strickland. Pinholster, 131 S. Ct. at 1403.

### a. Failure to prepare voluntary intoxication defense

Petitioner's claim that trial counsel, Richard Couch, was unprepared to present a defense of voluntary intoxication is refuted by the record. At a hearing on Petitioner's pro se motion for appointment of an attorney outside of the public defender's office, Petitioner told the trial judge that he wanted a different attorney because he believed that Couch did not understand his defense and "hasn't taken care of things." See Dkt. # 10-3, Tr. Hr'g on Defense Mot., May 29, 2008, at 3-4. The

trial judge denied Petitioner's request, explaining that Couch was competent legal counsel and that she knew Couch was in the process of obtaining Petitioner's medical records because she had signed the Court Order authorizing release of the records. Id. at 5; see also Dkt. # 10-12, O.R. at 95-96. In addition, at a motions hearing held on September 11, 2008, or eleven (11) days before the trial began, Couch discussed the defense of voluntary intoxication and explained his intention to present evidence of Petitioner's battle with depression and treatment with prescription medication. See Dkt. # 10-5, Tr. Mot. Hr'g. at 4-5. The prosecutor stated that there was no blood test to show what was in Petitioner's system that day and argued that, unless Petitioner testified, there was no evidence that Petitioner had taken any medication on October 1, 2007. Id. at 6-7. Couch conceded the last time Petitioner was seen by a doctor was August 6, 2007. Id. at 7. The trial judge agreed that if there were evidence showing that Petitioner took the drugs that day, then expert testimony about the medications "might become relevant." Id. at 12. For that reason, the trial judge declined to sustain the State's motion in limine, but set out parameters for presentation of drug and mental health evidence. Id. at 17.

The record also contains subpoenas for Dr. Trost, Susan Stegman, Dr. Price, and Dr. Rider to be present at trial to testify for the defense (Dkt. # 10-12, O.R. at 147-50). Also, during the second stage of trial, defense counsel requested that he be allowed to present mitigating evidence. Id. at 710. He stated he was prepared to present four (4) witnesses on behalf of Petitioner: Dennis K. Trost, M.D., Petitioner's treating physician; Ronnie Cornejo, Petitioner's friend for 25 years; Jim Wylam, who had known Petitioner for 20 years; and Jean Waymire, Petitioner's mother who was familiar with Petitioner's history of depression. Id. at 713-15. The trial judge denied the request to present mitigating evidence, relying on Oklahoma law providing that mitigating evidence will not

be received in a jury trial. Id. at 717 (citing Malone v. State, 58 P.3d 208 (Okla. Crim. App. 2002)). That record reflects that, contrary to Petitioner's allegations, his trial counsel was prepared to introduce evidence of Petitioner's mental health issues and that Petitioner had been prescribed drugs to combat the mental health issues. Petitioner is not entitled to habeas corpus relief on this claim. Pinholster, 131 S. Ct. at 1403.

> **b.** **Failure to present evidence supporting voluntary and/or involuntary intoxication**

Petitioner's claim that counsel was ineffective for failing to present medical or pharmacological evidence of the combined effect of the drugs Petitioner was taking at the time of the offenses to support either voluntary or involuntary intoxication is also unavailing. In Oklahoma, "[v]oluntary intoxication is not a defense to criminal culpability." Turrentine v. State, 965 P.2d 955, 968 (Okla. Crim. App. 1998). Oklahoma courts recognize an exception to this rule, however, if the defendant is able to show he "was so intoxicated that his mental abilities were totally overcome and it therefore became impossible for him to form the requisite criminal intent." Id. (citation omitted). Accordingly, "the defendant must introduce sufficient evidence to raise reasonable doubt as to his ability to form the requisite criminal intent." Id.

Significantly, Petitioner chose not to testify during either stage of trial.[3] See Dkt. # 10-9, Tr.

Vol. IV at 660-62, 737. Furthermore, as stated above, there was no blood test to show what was in

Petitioner's system that day. As a result, when defense counsel requested an instruction on

voluntary intoxication, the trial judge denied the request because no evidence had been presented

to support the giving of the instruction. Id. at 663-64. Without Petitioner's cooperation, trial

counsel was unable to present evidence demonstrating that Petitioner had taken prescription or

illegal drugs during the hours preceding the events of October 1, 2007. Therefore, Petitioner cannot

now claim that trial counsel performed deficiently in failing to introduce evidence of Petitioner's

prescription medication to support the defense of voluntary intoxication during the guilt/innocence

stage in light of Petitioner's failure to provide the necessary evidentiary material to support his

defense strategy. See, e.g., See Rose v. McNeil, 634 F.3d 1224, 1239 (11th Cir. 2011); Stano v.

Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991); Davis v. Greer, 13 F.3d 1134, 1139-40 (7th Cir.

1994); Evans v. Thaler, 2010 WL 8056694, at *24 n.195 (W.D. Tex. Nov. 9, 2010) (unpublished).

Furthermore, even if counsel performed deficiently, Petitioner has not demonstrated a reasonable

---

[3]Petitioner's decision not to testify may have been impacted by evidence acquired by the State. Outside the presence of the jury, the trial court made a record regarding the State's intention to introduce tape recordings of phone calls made by Petitioner from the Tulsa County Jail in July 2008, or approximately nine (9) months after commission of the crimes. See Dkt. # 10-9, Tr. Vol. IV at 552-56. During the calls, Petitioner made comments reflecting his callousness and lack of remorse for having shot Thompson. Id. at 553-54. Two of the comments were summarized as "something to the effect of she's not going [to] be spreading her legs anymore for others" and "I hope she falls out of her wheelchair." Id. Defense counsel argued the tapes were far more prejudicial than probative. Id. The trial judge agreed with defense counsel, but found that "the tapes would be appropriate in the second stage for the jury to hear prior to imposing punishment should they find the defendant guilty, or for the purposes of impeachment should the defendant take the stand." Id. at 556.

probability that the result of the proceeding would have been different had the evidence been presented.

Petitioner's claim that counsel was ineffective for failing to present a defense of involuntary intoxication fails for the same reason. "To invoke the defense of involuntary intoxication, the defendant must produce sufficient evidence to raise a reasonable doubt as to the voluntariness of his intoxication." Patton v. State, 973 P.2d 270, 290 (Okla. Crim. App. 1998) (citing Wooldridge v. State, 801 P.2d 729, 734 (Okla. Crim. App. 1990)). "Involuntary intoxication results from fraud, trickery or duress of another, accident or mistake on defendant's part, pathological condition or ignorance as to effects of prescribed medication." Id. As with Petitioner's claim of voluntary intoxication, the record contains no evidence demonstrating that Petitioner had taken his prescription medications at the time of the incidents giving rise to his convictions. As a result, Petitioner's trial counsel did not perform deficiently in failing to introduce evidence of Petitioner's prescription medication to support the defense of involuntary intoxication during the guilt/innocence stage. For that same reason, trial counsel did not perform deficiently in failing to hire a psychiatrist to provide expert testimony regarding the prescription drugs and their possible interactions.[4] Furthermore, even if counsel performed deficiently, Petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different had the evidence been presented.

In summary, Petitioner has failed to demonstrate that he is entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel. In the absence of any evidence demonstrating

---

[4]Petitioner's claim that trial counsel had a conflict of interest resulting from the failure of his office to pay for a psychiatric expert is speculative. Petitioner failed to produce evidence to support the claim or that the alleged conflict of interest caused counsel's efforts to fall below an objective standard of reasonableness. Habeas relief is not warranted. See Cummings v. Sirmons, 506 F.3d 1211, 1229 (10th Cir. 2007).

that Petitioner had ingested prescription medications or illegal drugs at the time of the incidents and given the overwhelming evidence of his guilt, Petitioner has failed to demonstrate a reasonable probability that the result of his trial would have been different, even if trial counsel performed deficiently in failing to introduce evidence of his mental health issues and prescription medication, as alleged by Petitioner. Therefore, Petitioner has not shown that the OCCA's adjudication of his claims of ineffective assistance of trial counsel was an unreasonable application of <u>Strickland</u>. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim. <u>Pinholster</u>, 131 S. Ct. at 1403.

### 5. Limitation on mitigating evidence in second stage (ground 6)

As his sixth ground of error, Petitioner alleges that the trial court's refusal to allow mitigating evidence during the second stage of trial resulted in the denial of due process. On direct appeal, the OCCA considered the evidence Petitioner sought to present during the second stage as well as the State's aggravating evidence which would have been admitted had Petitioner been allowed to present his mitigating evidence, and ruled that:

> [T]he trial court's decision to admit or exclude evidence is generally reviewed for an abuse of discretion. The trial court did not abuse its discretion in relying on *Malone v. State*, 2002 OK CR 34, 58 P.3d 208, and excluding the evidence Appellant had proffered in mitigation at the sentencing phase of the trial. Even if this evidence had been admitted, the State's proffer of evidence in aggravation (particularly, Appellant's recorded telephone conversations from jail, showing a cruel lack of remorse for what he had done to permanently paralyze the victim) convince us that the outcome would not have been any more favorable to Appellant.

(Dkt. # 8-3 at 4-5 (citation omitted)).

In habeas corpus cases, this Court may only grant relief if a petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has never held that the Eighth Amendment's requirement that the jury

be allowed to consider and give effect to all relevant mitigating evidence in capital cases, see, e.g., Boyde v. California, 494 U.S. 370 377-78 (1990), applies to noncapital cases. Gilmore v. Taylor, 508 U.S. 333, 349 (1993). In addition, a failure to afford an opportunity for allocution or to consider mitigating factors at sentencing raises no due process or other constitutional error cognizable in a non-capital federal habeas case. Scrivner v. Tansy, 68 F.3d 1234, 1240 (10th Cir. 1995). This claim is not cognizable on federal habeas corpus review. For that reason, habeas corpus relief on this ground of error shall be denied.

### 6. Excessive sentence (ground 7)

As his seventh proposition of error, Petitioner claims that the OCCA's rejection of his Eighth Amendment claim of excessive sentences was contrary to rulings by the Supreme Court. See Dkt. # 1 at 25. The OCCA ruled as follows:

> [C]onsidering the calculated and extremely violent nature of Appellant's conduct, and the fact that the instant offenses took place only a few months after Appellant's release from prison for a similar offense, we cannot say the sentences imposed are shocking to the conscience. *Rea v. State*, 2001 OK CR 28, ¶ 5, 34 P.3d 148, 149.

(Dkt. # 8-3 at 6). Petitioner alleges that the OCCA erred when it applied a "shocking to the conscience" test instead of the "proportionality" test. See Dkt. # 1 at 25.

In 2003, the Supreme Court addressed the Eighth Amendment's cruel and unusual punishment clause in the context of a sentence for a term of years in two decisions: Lockyer v. Andrade, 538 U.S. 63 (2003), and Ewing v. California, 538 U.S. 11 (2003). In Lockyer, the Court found that, under the AEDPA's standard of habeas review, its Eighth Amendment jurisprudence included the "clearly established" federal legal principle that a "gross disproportionality principle is applicable to sentences for terms of years." Lockyer, 538 U.S. at 72. Similarly, in Ewing, the Supreme Court clearly stated that the Eighth Amendment "contains a 'narrow proportionality

principle' that 'applies to noncapital sentences.'"  Ewing, 538 U.S. at 20 (quoting Harmelin v. Michigan, 501 U.S. 957, 996-997 (1991) (Kennedy, J., concurring in part and concurring in judgment)).

As recognized by Petitioner, the OCCA did not expressly apply a "proportionality" standard in reviewing his sentences. Rather, citing Rea v. State, 34 P.3d 148, 149 (Okla. Crim. App. 2001) (rejecting "proportionality" standard for review of criminal sentence because of "broad discretion" granted juries in Oklahoma to determine an appropriate sentence), the appellate court applied its well-recognized "shock the conscience" standard.  See Maxwell v. State, 775 P.2d 818, 820 (Okla. Crim. App. 1989) (rejecting "proportionality" review for sentences other than "cases involving life sentences without the possibility of parole" and holding "when a sentence is within statutory limits, it will not be modified unless, after a review of all the facts and circumstances, the sentence is so excessive that it shocks the conscience of this Court"); see also Coates v. State, 137 P.3d 682, 685 (Okla. Crim. App. 2006) (applying "shock the conscience" standard to review consecutive sentences); Dufries v. State, 133 P.3d 887, 891 (Okla. Crim. App. 2006) (finding mandatory sentence of life imprisonment without possibility of parole and $50,000 fine for drug-related conviction after two prior drug-related convictions did not shock the court's conscience).

The OCCA's decision in Petitioner's case reflects its consideration of the same factors deemed relevant in a proportionality analysis.  In Ewing, the Court considered the habeas petitioner's claim that his "three strikes sentence of 25 years to life [was] constitutionally disproportionate to his offense of 'shoplifting three golf clubs.'" Ewing, 538 U.S. at 28.  The Court first noted that the petitioner had misstated the gravity of his offense in framing the issue.  The Court then considered the seriousness of the offense as well as the petitioner's "long history of felony

recidivism" and the state's "choice of sanctions" for repeat offenders which the Court deemed a "legitimate penological goal."  Id. at 28-29.  The Court concluded that Ewing's sentence was "justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his long, serious criminal record."  Id. at 29-30.  Quoting from Harmelin v. Michigan, 501 U.S. 957, 1005 (1991), the Court found that this was "not 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'"  Ewing, 538 U.S. at 30.

In this case, Petitioner argued on direct appeal that he is serving five consecutive life sentences resulting in the equivalent of a sentence of death since he will die in prison.  He also argued that the jury was not allowed to hear mitigating evidence demonstrating that his mental illness combined with medication resulted in his "behaving in a manner which was out of character for the man."  See Dkt. # 8-1 at 47-48.  However, as noted by the OCCA, Petitioner's crimes in this case were calculated and extremely violent.  The OCCA also noted that Petitioner committed these crimes only a few months after his release from prison for a similar offense.[5]  Thus, in determining that Petitioner's sentences were not excessive, the OCCA considered the circumstances of Petitioner's offenses and Petitioner's recidivist history, the same factors relevant to a proportionality

---

[5]The Original Record contains the State's Amended Notice of Intent to Introduce Evidence of Other Bad Acts.  See Dkt. # 10-12, O.R. at 155-59.  In that motion, the State provided a description of the events giving rise to Petitioner's conviction entered in Tulsa County District Court, Case No. CF-2006-3686, including the following: on July 30, 2006, BAPD responded to a First Degree Burglary call at Thompson's home.  Id. at 156.  When police officers entered the house, they found Petitioner with a handgun in his waistband.  Id.  They later discovered a second loaded handgun that belonged to Petitioner on the couch.  Id. Petitioner also had two pairs of handcuffs, extra ammunition and a dagger in his possession.  Id. at 157.  Police reports reflected that Petitioner pointed a gun at Thompson and another woman, and told Thompson that "everything was going to end tonight."  Id.

analysis. Petitioner has failed to demonstrate that the OCCA's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, Petitioner is not entitled to habeas relief on ground 7.

## D. Procedural bar (ground 8)

In ground 8 of his petition, Petitioner claims that he was denied due process and his Sixth Amendment right to present a defense "solely because he invoked his Fifth Amendment right to remain silent." See Dkt. # 1. That claim has never been presented to the state courts. However, if Petitioner were to return to state court to present this claim in a second application for post-conviction relief, it would undoubtedly be procedurally barred under OKLA. STAT. tit. 22, § 1086.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Maes, 46 F.3d at 985; Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "in the vast majority of cases." Id. at 986 (internal quotation omitted).

Applying the principles of procedural default to these facts, the Court concludes that Petitioner's claim in ground 8 is procedurally barred from this Court's review. Petitioner failed to raise his ground 8 claim in his application for post-conviction relief. If Petitioner were to return to

state court to raise his claim in a second application for post-conviction relief, the OCCA would apply OKLA. STAT. tit. 22, § 1086, to bar the claim. Based on OKLA. STAT. tit. 22, § 1086, the OCCA routinely bars claims that could have been but were not raised at the first opportunity. Smith v. Workman, 550 F.3d 1258, 1267 (10th Cir. 2008). As a result, the anticipatory procedural bar applicable to ground 8 would be based on state law grounds independent and adequate to preclude federal review.[6]

Because of the procedural default of ground 8 in state court, this Court may not consider the claim unless Petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner fails to present any argument demonstrating "cause" for his failure to raise his defaulted claim on post-conviction appeal. Petitioner's only other means of gaining federal habeas review of his defaulted claim is a claim of actual innocence under the fundamental miscarriage of

---

[6]An "anticipatory procedural bar" may be applied to deny an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it. Anderson v. Sirmons, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007).

justice exception.  <u>Herrera v. Collins</u>, 506 U.S. 390, 403-404 (1993); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339-341 (1992); <u>see also</u> <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).  However, Petitioner does not claim to be actually innocent of the crimes for which he was convicted.  Therefore, Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claim is not considered, the Court concludes that ground 8 is procedurally barred.  <u>Coleman</u>, 501 U.S. at 724.  For that reason, Petitioner's request for habeas corpus relief on ground 8 shall be denied.

**E.    Certificate of appealability**

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).  In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Slack</u>, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. <u>See</u> <u>Dockins</u>, 374 F.3d at 937-38. As to the claim denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the **substitution** of Tracy McCollum, Warden, in place of James Rudek, Warden, as party respondent.

2. The petition for a writ of habeas corpus (Dkt. #1) is **denied**.

3. A separate judgment shall be entered in this matter.

4. A certificate of appealability is **denied**.

**DATED** this 6th day of August, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE